**AFFIDAVIT OF TASK FORCE OFFICER TERRANCE V. O'TOOLE**

I, Terrance V. O'Toole, being duly sworn, depose and state as follows:

1. I am a Detective with the Boston Police Department. I am also a Task Force Officer with the United States Drug Enforcement Administration ("DEA"). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I joined the Boston Police Department in 1988. In 1991, I was assigned to the Boston Police Drug Control Unit. In 1996, I was promoted to the rank of Detective. I was also detailed to the New England Field Division of the DEA and sworn in as a Task Force Agent. Since 1996, I have been assigned to a DEA Task Force comprised of agents from the DEA, officers from the Boston Police Department, and other local law enforcement agents. The mission of the Task Force is to combat drug trafficking in Massachusetts, particularly in the city of Boston.

3. I have received extensive training in narcotics enforcement investigations, including basic training at the Boston Police Department and additional training from the

DEA, the New England Narcotics Enforcement Officers Association, and the Suffolk County District Attorney's Office. I also regularly review information on drug trafficking and drug investigation trends distributed by the DOJ National Drug Intelligence Center.

4. As a Task Force Agent with the DEA, I have participated in numerous investigations related to the possession, manufacture, distribution and importation of controlled substances such as cocaine, heroin, marijuana, and other drugs. I have also participated in investigations relating to the financing of drug transactions and the laundering of drug proceeds. Many of these investigations were national or international in scope, and many required me to work closely, and to share information and intelligence, with members of other law enforcement agencies, including the Federal Bureau of Investigation (hereinafter "FBI"), the Department of Homeland Security Investigations (hereinafter "HSI"), the Massachusetts State Police (hereinafter, "MSP"), the Boston Police Department (hereinafter, "BPD"), and the United States Attorney's Office for the District of Massachusetts. I have debriefed, and continue to debrief, defendants, informants, and witnesses who have personal knowledge of drug trafficking organizations in Massachusetts.

5.  As a Task Force Agent with the DEA, I have utilized various investigatory tools and techniques, including confidential informants, cooperating witnesses, undercover agents, physical surveillance, search warrants, telephone toll analysis, court-authorized electronic surveillance, grand jury investigations, and witness interviews.  I am familiar with the benefits and limitations of these techniques.  I have previously submitted affidavits in support of complaints, search, and arrest warrants and in conjunction with applications requesting authorization to intercept wire communications in the United States District Court for the District of Massachusetts.

6.  This affidavit is made in support of a criminal complaint charging the following individuals with the listed offenses:

- **Mohammed KABA**, of 26 Mission Park Drive, Roxbury, Massachusetts: possession with intent to distribute cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1);

- **Quran ROWELL**, of 101 Willow Wood Street, #2, Dorchester, Massachusetts: Possession with intent to distribute cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); and

- **Joseph DYER**, of 83 Dakota Street, Dorchester, Massachusetts: possession with intent to distribute heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).

3

7. This affidavit is based upon information I have gained from my investigation, my training and experience, as well as information from other law enforcement officers. Because this affidavit is submitted for the limited purpose of securing arrest warrants, I have not included each and every fact known to me concerning this investigation. I have, however, set forth the facts that I believe are more than sufficient to establish probable cause in support of the requested criminal complaint.

8. On May 12, 2015, officers from the Boston Police Department Drug Control Unit received information from a citizen that Joseph Dyer, hereinafter "DYER," was selling cocaine and heroin out of an apartment located at 1352 Dorchester Avenue in Boston Massachusetts. The citizen also said that Dyer was armed with a firearm. (1352 Dorchester Avenue was known to the BPD Drug Control Unit as a drug trafficking location based on previous investigations.)

9. On the evening of May 13, 2015, BPD officers were conducting surveillance near 1352 Dorchester Avenue, in the Dorchester section of Boston. At approximately 6:45 p.m., BPD officers observed Joseph DYER, who was known to the officers, standing at the intersection of Dorchester Avenue and Kimball Street and looking at passing cars as if he

were waiting for someone.  Moments later, officers observed a red Honda Odyssey automobile, hereinafter "the Odyssey," bearing Massachusetts registration 2CY839, pull over near DYER.[1]  The BPD officers observed DYER walk to and enter the rear passenger compartment of the Odyssey, which then drove away.  BPD officers followed the Odyssey as it drove around the block and dropped off DYER back at the intersection of Dorchester Avenue and Kimball Street (the same location where DYER got into the Odyssey minutes earlier).  Based on their training and experience, the officers believed that the above activity was indicative of a drug transaction.

10. As DYER was walking away from the Odyssey, BPD officers Jeremiah O'Brien and Nicholas Beliveau, while displaying their badges, approached DYER, identified themselves as Boston Police Officers, and asked to speak with him.  DYER then ran away, and the Police officers ran after him.  During the foot chase, officers observed DYER reaching at his waist area.  Fearing that DYER was armed, the officers tackled DYER and attempted to handcuff him. DYER refused to comply with the officers' verbal commands to surrender his hands and to stop resisting.  After a brief struggle, the officers succeeded in handcuffing DYER.

---

[1] The Odyssey was registered to Caleb Rock of 328 Harvard Street, Dorchester, Massachusetts.

5

While this was occurring, assisting officers saw the Odyssey make a quick U-turn and speed away.

11.  Officer Beliveau advised DYER of his *Miranda* rights while DYER was still on the ground. When officers rolled DYER over, they observed on the ground, in the location where DYER had been lying, a plastic bag containing a white rock-like substance, which, based on their training and experience, the officers believed to be crack cocaine. The officers asked DYER if he had any more drugs on his person. DYER replied, "Yes, I have more." DYER then said, "You guys got me good." A search of DYER yielded an amount of a tan compressed powder, which, based on their training and experience, the officers believed to be heroin. The same search also revealed another, separate, amount of a substance, which, based on their training and experience, the officers believed to be crack cocaine. Additionally, officers found approximately $1,032 in U.S. Currency in DYER's pants' pockets. During subsequent field testing, the white rock-like substances (approximately 30 grams) and the tan compressed powder (approximately 7.8 grams) recovered from DYER tested positive for crack cocaine and heroin, respectively.

12.  Shortly thereafter, and believing that the occupants of the Odyssey had been involved in a drug

6

transaction, other BPD officers stopped the Odyssey. The occupants of the Odyssey were identified as: Elizabeth SCOTT, the driver; Quran ROWELL, hereinafter "ROWELL," who was sitting in the front passenger seat; and Mohammed KABA, hereinafter "KABA," who was sitting in a rear passenger seat. The officers who searched and arrested DYER communicated to the officers who stopped the Odyssey that the occupants of the Odyssey should be arrested for knowingly being in the presence of a Class A substance (heroin). BPD Officers Paradis, Medina and Bernier saw ROWELL immediately lean forward and appear to recline his seat all the way back. According to the officers, ROWELL's chest was compressing in and out uncontrollably and he appeared to be extremely nervous.

13. During a subsequent search of ROWELL, officers found a plastic bag containing numerous pieces of a white rock-like substance, each in its own plastic bag, and another plastic bag containing a compressed tan substance. Based upon their training and experience, the officers believed the substances to be crack cocaine and heroin, respectively. Officers also found approximately $1,736 in U.S. Currency on ROWELL. During subsequent field tests, the white rock-like substances (approximately 68.2 grams) and the compressed tan substance (approximately 15.2 grams)

7

recovered from ROWELL tested positive for crack cocaine and heroin, respectively.

14. During a subsequent search of KABA, officers found a plastic bag containing numerous pieces of a white rock-like substance, each in its own plastic bag. Based upon their training and experience, officers believed this substance to be crack cocaine. Officers also found approximately $5,071 in U.S. Currency on KABA. During a subsequent field test, the white rock-like substance (approximately 38.6 grams) recovered from KABA tested positive for crack cocaine.

## CONCLUSION

15. Wherefore, there is probable cause to believe that KABA, ROWELL and DYER each committed violations of 21 U.S.C. § 841(a)(1).

_____
Terrance V. O'Toole
Task Force Officer
Drug Enforcement Administration



Subscribed and sworn to before me at Boston, Massachusetts this  29  day of July, 2015

_____
HON. M. PAGE KELLY
UNITED STATES MAGISTRATE JUDGE

8